UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN LEE BURDICK,

    Plaintiff,

v.                                                          Hon. Sally J. Berens

COMMISSIONER OF SOCIAL SECURITY,        Case No. 1:20-cv-425

    Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence and in accordance with the law, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks judicial review of this decision.

For the following reasons, the Court will **reverse** the Commissioner's decision and remand the matter for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g).

### Standard of Review

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social

security case is limited to determining whether the Commissioner applied the proper legal standards in making his decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and his findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**Procedural Posture**

Plaintiff filed a previous application for DIB on August 18, 2014, alleging that he became disabled as of December 5, 2011. After Plaintiff's claim was denied, Administrative Law Judge

(ALJ) Christopher Ambrose held a hearing and denied the claim in a written decision issued on February 3, 2016. (PageID.106–116.) ALJ Ambrose determined that Plaintiff's date last insured was December 31, 2016; that Plaintiff had not performed substantial gainful activity since his alleged onset date of December 5, 2011; and that Plaintiff had severe impairments of degenerative disc disease of the lumbar spine, bipolar disorder, panic disorder, and obsessive-compulsive disorder. (PageID.108.) ALJ Ambrose determined that Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he: (1) cannot climb ladders, ropes, or scaffolds; (2) can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; (3) must avoid concentrated exposure to excessive vibration; (4) can perform simple, routine, repetitive tasks with one-to-two-step instructions; and (5) cannot tolerate interaction with the public, but can occasionally interact with supervisors and co-workers. (PageID.110.) ALJ Ambrose found that Plaintiff could not perform his past relevant work, but based upon his RFC determination, found that jobs existed in significant numbers in the national economy that Plaintiff could perform. (PageID.114–16.)

The Appeals Council denied Plaintiff's request for review. It noted that it had reviewed additional records from Clinical Psychology Services from a later period that did not affect ALJ Ambrose's decision, but advised Plaintiff that if he filed a new claim for DIB within six months, the Agency would use the date of his request for review, March 31, 2016, as the new filing date. (PageID.122.)

Plaintiff filed applications for DIB and SSI on May 22, 2017, within the six-month period. (PageID.47.) His application for SSI was denied, but no determination was made on his application for DIB. Plaintiff requested a hearing before an ALJ on his SSI application. On January 29, 2019, ALJ Colleen Mamelka held a hearing on the SSI application, at which Plaintiff

and Joanne Pfeffer, an impartial vocational expert, testified. (PageID.75–100.) During the hearing, ALJ Mamelka advised Plaintiff that if he filed a DIB application post-hearing, it would be escalated to the hearing level along with his SSI application. Plaintiff did so, and his DIB application was escalated to the hearing level and considered along with the SSI application. (PageID.47.) On May 3, 2019, ALJ Mamelka issued a written decision, finding that Plaintiff was not disabled from February 4, 2016, (the day after ALJ Ambrose's prior decision) through the date of the decision. (PageID.46–66.) On March 3, 2020, the Appeals Counsel denied Plaintiff's request for review (PageID.37–39), making ALJ Mamelka's May 3, 2019 decision the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432,434 (6th Cir. 2007).

Plaintiff initiated this civil action for judicial review on May 15, 2020.

**Analysis of the ALJ's Opinion**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing his past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional

4

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his RFC is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

The ALJ determined that Plaintiff was insured under the Act through December 31, 2016. (PageID.50.) After finding that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 4, 2016, pursuant to Acquiescence Rulings 98-3(6) and 98-4(6), the ALJ adopted ALJ Ambrose's prior step-two finding that Plaintiff suffered from severe impairments of: (1) degenerative disc disease; (2) bipolar disorder; (3) anxiety; and (4) obsessive compulsive disorder. (*Id.*)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ considered Listings 1.04, 12.04, 12.06, and 12.08. (PageID.51–54.)

---

capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

With respect to Plaintiff's RFC, the ALJ adopted the prior mental findings that Plaintiff was capable of performing simple, routine, and repetitive work and that he was limited to no public interaction and only occasional interaction with co-workers and supervisors, but adopted additional limitations based on new evidence supporting greater limitations in concentrating, persisting, or maintaining pace. However, contrary to the prior decision, she found that the limitation of occasional balancing, kneeling, crouching, and crawling was not supported. (PageID.64.) The ALJ thus found that Plaintiff retained the ability to perform light work, except:

> [He] cannot climb ladders, ropes, or scaffolds; and can occasionally stoop and climb ramps and stairs. He is capable of performing simple, routine, and repetitive tasks that are performed in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine work place changes. The claimant cannot have direct interaction with the general public and occasional interaction with coworkers and supervisors.

(PageID.54.)

At step four, in accordance with *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990), and Acquiescence Ruling 98-3(6), the ALJ adopted ALJ Ambrose's prior determination that Plaintiff did not retain the RFC to perform any of his past relevant work. (PageID.64.) At step five, however, based on testimony from the vocational expert, the ALJ found that Plaintiff could perform the occupations of mailroom clerk, collator operator, and marker, 216,000 of which existed in the national economy that an individual of Plaintiff's age, education, work experience, and RFC could perform. (PageID.65–66.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

6

**Discussion**

Plaintiff raises two issues in his appeal: (1) the ALJ failed to properly weigh the opinion of Plaintiff's treating psychiatrist, Leopoldo Covarrubias, M.D., in accordance with 20 C.F.R. §§ 404.1527 and 416.927; and (2) the RFC determination fails to consider the full impact of Plaintiff's three severe mental impairments on his functional ability as required by SSR 96-8p.

**I.  Dr. Covarrubias's Opinion**

Dr. Covarrubias has been Plaintiff's treating psychiatrist since at least 2016.[2] In January 2019, he completed a medical source statement regarding Plaintiff's mental abilities to do work-related activity. (PageID.432–35.) Dr. Covarrubias opined that Plaintiff had mild limitations in his ability to understand and remember simple instructions, no limitations in his ability to carry out simple instructions, and moderate limitations in his ability to make judgments on simple work-related instructions. He further opined that Plaintiff had marked limitations in his abilities to understand and remember and carry out complex instructions and extreme limitations in his ability to make judgments on complex work-related decisions. As support, the doctor cited evidence of exacerbation of attentional deficits; impaired focus and concentration due to racing thoughts; obsessive thinking; difficulty with memory recall; and impulsivity. (PageID.432.) Dr. Covarrubias also opined that Plaintiff had moderate limitations in his abilities to interact appropriately with the public and co-workers and marked limitations in his abilities to interact

---

[2] The ALJ noted that the record indicated that Dr. Covarrubias had treated Plaintiff since 2016 (PageID.63), while Plaintiff asserts that the treating relationship has existed since 2000. (ECF No. 15 at PageID.41.) Plaintiff's assertion is apparently based on Dr. Covarrubias's answer to a question in his January 22, 2019, mental medical source statement regarding information about past limitations. (PageID.434.) The answer to the question, which simply asked the provider if he or she had "sufficient information" about the claimant's "past limitations," suggests a treating relationship since 2000, but does not expressly state that the treating relationship had existed since that time. The dispute is immaterial, as the ALJ acknowledged that Dr. Covarrubias had treated Plaintiff for a sufficient period of time obtain a longitudinal perspective on Plaintiff's symptoms. (PageID.63.)

7

appropriately with supervisors and to respond appropriately to usual work situations and to changes in a routine work setting. He cited factors of overwhelming anxiety with panic reaction when Plaintiff attempted to interact with anyone other than his wife and that Plaintiff was unable to handle changes in work settings and routines. In addition, the doctor noted that Plaintiff's medical mood disorder impaired his ability to regulate his emotions and that he experienced unpredictable episodes of depression, anxiety, frustration, and emotional energy. He cited many of the same factors to support these deficits. (PageID.434.)

> The ALJ assigned partial weight to the opinion as follows:
>
> According to the record, Dr. Covarrubias has treated the claimant since 2016 and he has a longitudinal perspective on the claimant's symptoms. While the clinician typically observed that the claimant presented as focused, relevant, and coherent, the physician included deficits in the claimant's concentration, attention, and ability to interact with others, in his opinion. These findings are mostly consistent with the claimant's reports and other treatment providers' observations included in the record that he has difficulty with concentration, attention, and social interaction. The clinician's findings that the claimant has mild limitations in his ability to understand and remember simple instructions and no limitations with carrying out simple instructions is supported by the evidence in the record that the claimant could sustain unskilled full-time work. The physician also noted limitations in interacting with others which is consistent with his symptoms from anxiety.

(PageID.63.) Plaintiff contends that the ALJ should have given Dr. Covarrubias's opinion controlling weight, particularly in light of his long-standing treatment relationship and extensive experience with Plaintiff's impairments and their impact on his ability to function. (ECF No. 15 at PageId.451–52.) Plaintiff contends that the ALJ erred in rejecting the doctor's opinions that Plaintiff had marked limitations in his ability to interact appropriately with supervisors and in responding appropriately to usual work situations and changes in a routine work setting, and that the ALJ failed to give good reasons for not affording those opinions controlling weight. (*Id.* at PageID.452.)

8

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition.[3] *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). That deference is appropriate, however, only where the opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must give "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (citation omitted). Simply stating that the physician's opinions "are not well-supported by any

---

[3] Because Plaintiff's protective filing date was March 31, 2016—prior to the effective date of the new rules on opinion evidence, *see Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844–01, 2017 WL 168819 (Jan. 18, 2017)—the ALJ applied the former rules. (PageID.62.)

objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight it should be afforded. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required explicitly to discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

As set forth above, the ALJ clearly credited Dr. Covarrubias's opinions regarding Plaintiff's abilities to understand and remember, and carry out, simple instructions, which supported that Plaintiff could sustain unskilled full-time work. The ALJ also credited, to a degree, Dr. Covarrubias's opinion that Plaintiff was limited in his ability to interact with others. But the ALJ failed to articulate specifically why she chose not to credit his opinion of more restrictive limitations regarding Plaintiff's abilities to interact appropriately with supervisors and to respond appropriately to usual work situations and to changes in a routine work setting. As to this point, Defendant fails to specifically address Plaintiff's contention that the ALJ's reasons for rejecting these opinions were "missing." (ECF No. 15 at pageID.452.) Instead, Defendant points to record evidence that the ALJ cited or that further supports her RFC determination that is inconsistent with the rejected limitations. (ECF No. 16 at PageID.470–71.) However, courts have been clear that the Commissioner's *post hoc* rationale on appeal is not a substitute for the "good

10

reasons" an ALJ must provide for rejecting a treating physician opinion. *See Allen v. Berryhill*, 273 F. Supp. 3d 763, 771 (M.D. Tenn. 2017) ("[T]he Court notes that it 'may not accept appellate counsel's post hoc rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.'" (quoting *Berryhill v. Shalala*, No. 92-5876, 1993 WL 361792, at *6 (6th Cir. Sept. 16, 1993))); (*Schultz v. Comm'r of Soc. Sec.*, No. 15-12473, 2016 WL 4577049, at *6 (E.D. Mich. Aug. 10, 2016), *report and recommendation adopted*, 2016 W: 4538366 (E.D. Mich. Aug. 31, 2016) ("But Defendant's post-hoc rationalization of the ALJ's assessment of Drs. Kazmers and Rao's opinions does not cure the ALJ's failure to provide good reasons."). Moreover, as set forth in *Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2004), even where there is substantial evidence in the record that otherwise supports the Commissioner's decision, a court will not "hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion." *Id.* at 544–45 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004)).

Therefore, the Court will remand this matter to allow the ALJ to set forth her reasons for rejecting the portions of Dr. Covarrubias's opinion discussed above. Because remand may or may not result in a different RFC, the Court need not address Plaintiff's second issue pertaining to the ALJ's failure to adequately address the issue of absenteeism. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**Conclusion**

For the reasons stated above, the Commissioner's decision will be **reversed and remanded** for further consideration consistent with this Opinion pursuant to sentence four of 42 U.S.C. § 405(g).

An order consistent with this opinion will enter.


Dated: January 20, 2022                                  /s/ Sally J. Berens
                                                         SALLY J. BERENS
                                                         U.S. Magistrate Judge